UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN D. SVELUND, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO. 2:06-cv-00500-RSL-JLW |
| | ) | |
| v. | ) | |
| | ) | |
| D.K. SISTO, WARDEN, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Respondent.[1] | ) | |
| ———————————————— | ) | |

I.      SUMMARY

Petitioner John Svelund is currently incarcerated at the California State Prison, Solano in Vacaville, California.  He was convicted by a jury of one count of second degree murder in Los Angeles County Superior Court on October 23, 1987.  He is currently serving a sentence of fifteen-years-to-life with the possibility of parole and has filed a petition for writ of habeas

_____

[1] Because D.K. Sisto is currently the warden at the institution in which petitioner is incarcerated, the Court has substituted his name for that of the original respondent, Tom Carey.  *See* Federal Rule of Civil Procedure 25(d).

01  corpus, under 28 U.S.C. § 2254, with the assistance of counsel, challenging his 2002 parole

02  denial by the Board of Parole Hearings of the State of California (the "Board").[2]  (*See* Docket

03  1.)  Petitioner contends his due process rights were violated when the Board: (1) denied him

04  parole based upon insufficient evidence and immutable factors, none of which he contends

05  supports a finding of current dangerousness; (2) concluded his parole plans were inadequate

06  because the Board failed to ensure his wife's most current letter regarding his parole plans

07  was in the Board's file; (3) found petitioner failed to accept responsibility for the crime

08  because petitioner would not agree with the prosecutor's version of events; (4) failed to grant

09  petitioner a parole release date after he complied with the Board's 1999 parole release

10  requirements; and (5) was biased due to pressure by then-Governor Gray Davis' "no parole"

11  policy.  (*See id.*)  Petitioner also claims California Code of Regulations Title 15 §

12  2402(c)(1)(A-E) is unconstitutionally vague, and that his sentence is disproportionate to his

13  offense in violation of his Eighth Amendment right to be free from cruel and unusual

14  punishment.  (*See id.*)

15      Respondent has filed an answer to the petition, together with relevant portions of the

16  state court record, and petitioner has filed a traverse in response to the answer.  (*See* Dkts. 9 &

17  10.)  The briefing is now complete and this matter is ripe for review.  The Court, having

18  thoroughly reviewed the record and the briefing of both parties, recommends the Court deny

19  the petition and dismiss this action with prejudice.

20

21

22          [2] The Board of Parole Hearings replaced the Board of Prison Terms, which was abolished on
July 1, 2005.  *See* California Penal Code § 5075(a).

01   In a separate case, this Court has already denied petitioner's challenge to the denial of

02 parole at a *later* hearing.  The details are set forth in note 4, *infra*.

03   II.   STANDARD OF REVIEW

04   The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

05 petition as it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320,

06 326-27 (1997).  Because petitioner is in the custody of the California Department of

07 Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive

08 vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)

09 (providing that § 2254 is "the exclusive vehicle for a habeas petition by a state prisoner in

10 custody pursuant to a state court judgment, even when the petitioner is not challenging his

11 underlying state court conviction.").  Under AEDPA, a habeas petition may not be granted

12 with respect to any claim adjudicated on the merits in state court unless petitioner

13 demonstrates that the highest state court decision rejecting his petition was either "contrary to,

14 or involved an unreasonable application of, clearly established Federal law, as determined by

15 the Supreme Court of the United States," or "was based on an unreasonable determination of

16 the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.

17 § 2254(d)(1) and (2).

18   As a threshold matter, this Court must ascertain whether relevant federal law was

19 "clearly established" at the time of the state court's decision.  To make this determination, the

20 Court may only consider the holdings, as opposed to dicta, of the United States Supreme

21 Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It is also appropriate to look to

22 lower federal court decisions to determine what law has been "clearly established" by the

01 Supreme Court and the reasonableness of a particular application of that law.  *See Duhaime v.*

02 *Ducharme*, 200 F.3d 597, 598 (9th Cir. 1999).  In this context, Ninth Circuit precedent

03 remains persuasive but not binding authority.  *See Williams*, 529 U.S. at 412-13; *Clark v.*

04 *Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

05       The Court must then determine whether the state court's decision was "contrary to, or

06 involved an unreasonable application of, clearly established Federal law."  *See Lockyer v.*

07 *Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may

08 grant the writ if the state court arrives at a conclusion opposite to that reached by [the

09 Supreme] Court on a question of law or if the state court decides a case differently than [the]

10 Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.

11 "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

12 state court identifies the correct governing legal principle from [the] Court's decisions but

13 unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all

14 times, a federal habeas court must keep in mind that it "may not issue the writ simply because

15 [it] concludes in its independent judgment that the relevant state-court decision applied clearly

16 established federal law erroneously or incorrectly.  Rather that application must also be

17 [objectively] unreasonable."  *Id.* at 411.

18       In each case, the petitioner has the burden of establishing that the state court decision

19 was contrary to, or involved an unreasonable application of, clearly established federal law.

20 *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine

21 whether the petitioner has met this burden, a federal habeas court normally looks to the last

22 reasoned state court decision because subsequent unexplained orders upholding that judgment

REPORT AND RECOMMENDATION - 4

01  are presumed to rest on the same ground.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04

02  (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

03       Finally, AEDPA requires federal courts to give considerable deference to state court

04  decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).

05  Federal courts are also bound by a state's interpretation of its own laws.  *See Murtishaw v.*

06  *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713

07  (9th Cir. 1993)).

08       III.    PRIOR STATE COURT PROCEEDINGS

09       Respondent concedes in his answer that petitioner has properly exhausted his state

10  court remedies and timely filed all of his federal claims for relief.  (*See* Dkt. 9 at 2.)  Once it

11  has been determined that a petitioner's claims have been exhausted, this Court typically looks

12  to the state courts' orders upholding the Board's decision to determine whether they meet the

13  deferential AEDPA standard.  *See Ylst*, 501 U.S. at 803-04.  In denying the petition, the Los

14  Angeles County Superior Court issued a reasoned decision addressing many (but not all) of

15  petitioner's due process claims.  The superior court found that there was sufficient evidence to

16  support the Board's decision to deny a parole release date, but that it was "improper for the

17  Board to infer from these facts that the victim was abused."  (Dkt. 1, Exh. H at 4.)  The

18  superior court further concluded the Board acted properly in considering a prior conviction for

19  carrying a loaded firearm; but that his arrest for throwing a substance at a vehicle ". . . absent

20  corroborating evidence . . . [did not] support a finding of unsuitability."  (*Id.*)  The superior

21  court failed to address petitioner's remaining federal constitutional claims.  The California

22  Court of Appeal affirmed the superior court's decision, specifically upholding the lower

01  court's findings.  (*See id.*, Exh. I.)

02      When a state court issues a decision on the merits but does not provide a reasoned

03  decision as to all issues presented, we must review the record independently to determine

04  whether the state courts' decisions were contrary to or involved an unreasonable application

05  of Supreme Court holdings.  *See Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).

06  Accordingly, this Court must conduct an independent review of all of petitioner's federal

07  constitutional claims, except his due process claim that the Board's decision was not

08  supported by "some evidence."  Although our review of the record is conducted

09  independently, we continue to show deference to the state court's ultimate decision.  *See*

10  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

11      IV.     BACKGROUND

12      The Board's 2002 report summarized the facts of the crime, as set forth in the

13  California Court of Appeal decision on direct review, as follows:

14              [It] was established that in late January 1987, as the . . . inmate
                sat at the bar at the Torch Club in Long Beach, he called
15              Cynthia Parrish, P-A-R-R-I-S-H, who was seated at the
                opposite end of the bar[,] a thief.  He further accused her of
16              stealing something from his home.  Although she denied it, the
                inmate said quote, "all right, I'll get even with you," end quote.
17              The inmate was seen leaving the Torch Club with Parrish at
                approximately 1:00 a.m. on February 24th, 1987.   Victim
18              Parrish's body was discovered in the snow in a desolate area off
                the Golden State Freeway late on the afternoon of February the
19              25th.  The snow had begun to fall on the afternoon of February
                24th and there was no snow under the body.  The cause of death
20              was strangulation and the body evidenced signs of struggle.
                Following the inmate's arrest, police obtained a warrant
21              authorizing the search of his apartment.   A search of his
                residence disclosed two hunting knives.  Jeffrey Day, a friend of
22              the inmate's, testified that he had never seen knives other than
                kitchen knives in the inmate's apartment.  On two occasions,

01

02              the bartender of the Torch Club had observed knives in
                Parrish's purse, including a five-inch hunting knife.

03

04    (Dkt. 1, Exh. A at 9-10.)  The Board then read petitioner's version of the events, which was

05    taken from the initial parole consideration hearing report:

06              In an interview on January 26th, 1996, inmate Svelund said he
                did cause Cynthia Parrish to choke to death.  He still maintains
07              he was in the act of defending himself from a knife attack by
                victim Parrish when the death occurred.  Inmate Svelund admits
08              to being an acquaintance of Parrish.  Both he and the victim
                were patrons of the Torch Club, a neighborhood bar.  Inmate
09              Svelund claims victim Parrish was a cocaine addict, that he had
                invited her over on the night of the crime to smoke a joint in his
10              apartment.   According to inmate Svelund, he only invited
                Parrish over for company, but victim Parrish believed he was
11              interested in sex.  When he told her he wasn't interested in sex,
                she apparently became upset and pulled a knife on him.  He
12              believes she may have become angry because she was in need
                of money for her cocaine habit.  Inmate Svelund related that
13              Parrish swiped at him several times with the knife before he
                grabbed her knife handle with one of his hands and her throat
14              with the other.  He then pinned her to the ground until she let go
                of the knife and went unconscious.  He then kicked the knife
15              away believing victim Parrish had only passed out. When she
                did not regain consciousness, he said he panicked.   After
16              debating for an hour or so, he decided to attempt to conceal the
                crime by dumping the body in the mountains.   He said he
17              disposed of the victim's knife with the body.  Inmate Svelund
                said information came out during the trial that the victim Parrish
18              had a history of prostitution.   Although Parrish had been to
                inmate Svelund's apartment prior to the night of the offense, he
19              claims to have no knowledge of her being a prostitute.
                According to Svelund, the hunting knives found in his residence
20              during a search did belong to him even though his friend,
                Jeffrey Day, had no knowledge of them.  In late January 1987,
21              inmate Svelund did accuse Parrish of stealing something from
                his apartment while they were at the Torch Club, at the Torch
22              Club bar. He said that the missing property was about $10
                dollars [sic] worth of marijuana.  Inmate Svelund claimed he

REPORT AND RECOMMENDATION - 7

did not retaliate against her in any way and said he did not want
to hold a grudge because it was such a minor loss and he could
not prove she took anything.  Inmate Svelund said he never
used any other substances besides marijuana and alcohol.  On
the night of the crime, he was under the influence of both
substances.

(Dkt. 1, Exh. A at 10-12.)  Petitioner was tried by a jury and convicted of second degree

murder on October 23, 1987, in Los Angeles County Superior Court.  (*See* Dkt. 9, Exh. 1.)

He began serving his sentence of fifteen-years-to-life with the possibility of parole on

December 30, 1987.  (*See* Dkt.1, Exh. A at 1.)  His minimum eligible parole date was set for

June 12, 1997.[3]  (*See id.*)  Petitioner has now been incarcerated for approximately twenty-two

years for this offense.

The parole denial, which is the subject of this petition, followed a parole hearing held

on September 12, 2002.  (*See* Dkt. 1 at 1.)  This was petitioner's second subsequent (third

overall) parole release hearing.[4]  (*See id.* at 1-2.)  All prior and at least one subsequent request

for parole were also denied.  After his 2002 denial, petitioner filed an administrative appeal of

the Board's decision, as well as habeas corpus petitions in the Los Angeles County Superior

Court, and the California Court of Appeal and Supreme Court.  (*See id.*, Exhs. B, H, I, and J.)

---

[3] The 2005 Board Report stated that petitioner's minimum eligible parole date was October
11, 1997.  (*See* Case No. 2:07-cv-01251-RSL-JWL, Dkt. 10, Exh. 4 at 1.)  In this case, the Board
stated petitioner's minimum eligible parole date was June 12, 1997.  (*See* Dkt. 1, Exh. A at 1.)
Respondent is directed to notify the Board of this discrepancy so that it can be corrected prior to
petitioner's next parole hearing.

[4] In 2007, after this petition was filed, petitioner, proceeding pro se, filed a federal habeas
corpus petition challenging his third subsequent (fourth overall) parole consideration hearing.  This
Court denied the petition on the merits on November 23, 2009.  (*See* Case No. 2:07-cv-01251-RSL-
JLW, Dkts. 24 & 25.)  Thus, this Court has already rejected a challenge to a parole denial which was
later than the one involved in this case.  Petitioner has filed a notice of appeal in the other case.  (*See
id.*, Dkt. 26.)  Inexplicably, the Board's 2002 and 2005 hearing transcripts reflect two vastly different
records with regard to petitioner's parole suitability.

01  As discussed, *supra*, those petitions were unsuccessful.  (*See id.*)  This federal habeas petition

02  followed.  Petitioner contends the 2002 denial by the Board violated his federal constitutional

03  rights.  Thus, the habeas petition before this Court does not attack the propriety of his

04  conviction or sentence.

05       V.       FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

06            A.       *Due Process Right to be Released on Parole*

07            Under the Fifth and Fourteenth Amendments to the United States Constitution, the

08  government is prohibited from depriving an inmate of life, liberty or property without the due

09  process of law.  U.S. Const. amends. V, XIV.  A prisoner's due process claim must be

10  analyzed in two steps: the first asks whether the state has interfered with a constitutionally

11  protected liberty or property interest of the prisoner, and the second asks whether the

12  procedures accompanying that interference were constitutionally sufficient.  *Ky. Dep't of*

13  *Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d

14  1123, 1127 (9th Cir. 2006).

15            Accordingly, our first inquiry is whether petitioner has a constitutionally protected

16  liberty interest in parole.  The Supreme Court articulated the governing rule in this area in

17  *Greenholtz v. Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482

18  U.S. 369 (1987).  *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying

19  "the 'clearly established' framework of *Greenholtz* and *Allen"* to California's parole scheme).

20  The Court in *Greenholtz* determined that although there is no constitutional right to be

21  conditionally released on parole, if a state's statutory scheme employs mandatory language

22  that creates a presumption that parole release will be granted if certain designated findings are

01  made, the statute gives rise to a constitutional liberty interest.  *See Greenholtz*, 442 U.S. at 7,

02  12; *Allen*, 482 U.S. at 377-78.

03  As discussed *infra*, California statutes and regulations afford a prisoner serving an

04  indeterminate life sentence an expectation of parole unless, in the judgment of the parole

05  authority, he "will pose an unreasonable risk of danger to society if released from prison." 15

06  CCR § 2402(a).  The Ninth Circuit has therefore held that "California's parole scheme gives

07  rise to a cognizable liberty interest in release on parole."  *McQuillion*, 306 F.3d at 902.  To

08  similar effect, *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held that California Penal

09  Code § 3041 vests all "prisoners whose sentences provide for the possibility of parole with a

10  constitutionally protected liberty interest in the receipt of a parole release date, a liberty

11  interest that is protected by the procedural safeguards of the Due Process Clause."  This

12  "liberty interest is created, not upon the grant of a parole date, but upon the incarceration of

13  the inmate."  *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  *See also Sass*, 461 F.3d at 1127.

14  Because the Board's denial of parole interfered with petitioner's constitutionally-

15  protected liberty interest, this Court must proceed to the second step in the procedural due

16  process analysis and determine whether the procedures accompanying that interference were

17  constitutionally sufficient.  "[T]he Supreme Court [has] clearly established that a parole

18  board's decision deprives a prisoner of due process with respect to this interest if the board's

19  decision is not supported by 'some evidence in the record.'"  *Irons*, 505 F.3d at 851 (citing

20  *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard

21  applies in prison disciplinary proceedings)).  The "some evidence" standard requires this

22  Court to determine "whether there is any evidence in the record that could support the

01  conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.  Although *Hill*

02  involved the accumulation of good time credits rather than release on parole, later cases have

03  held that the same constitutional principles apply in the parole context because both situations

04  directly affect the duration of the prison term.  *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d

05  1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme

06  Court in *Hill* in the parole context); *accord*, *Sass*, 461 F.3d at 1128-29); *Biggs*, 334 F.3d at

07  915; *McQuillion*, 306 F.3d at 904.

08          "The fundamental fairness guaranteed by the Due Process Clause does not require

09  courts to set aside decisions of prison administrators that have some basis in fact," however.

10  *Hill*, 472 U.S. at 456.  Similarly, the "some evidence" standard is not an invitation to examine

11  the entire record, independently assess witnesses' credibility, or re-weigh the evidence.  *Id.* at

12  455.  Instead, it is there to ensure that an inmate's loss of parole was not arbitrarily imposed.

13  *See id.* at 454.  The Court in *Hill* added an exclamation point to the limited scope of federal

14  habeas review when it upheld the finding of the prison administrators despite the Court's

15  characterization of the supporting evidence as "meager."  *See id.* at 457.

16          B.      *California's Statutory and Regulatory Scheme*

17          In order to determine whether "some evidence" supported the Board's decision with

18  respect to petitioner, this Court must consider the California statutes and regulations that

19  govern the Board's decision-making.  *See Biggs*, 334 F.3d at 915.  Under California law, the

20  Board is authorized to set release dates and grant parole for inmates with indeterminate

21  sentences.  *See* Cal. Penal Code § 3040 and 5075, *et seq.*  Section 3041(a) requires the Board

22  to meet with each inmate one year before the expiration of his minimum sentence and

01 normally set a release date in a manner that will provide uniform terms for offenses of similar

02 gravity and magnitude with respect to their threat to the public, as well as comply with

03 applicable sentencing rules.  Subsection (b) of this section requires that the Board set a release

04 date "unless it determines that the gravity of current convicted offense or offenses, or the

05 timing and gravity of current or past convicted offense or offenses, is such that consideration

06 of the public safety requires a more lengthy period of incarceration." *Id.*, § 3041(b).  Pursuant

07 to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release

08 dates" which take into account the number of victims of the offense as well as other factors in

09 mitigation or aggravation of the crime.  The Board has therefore promulgated regulations

10 setting forth the guidelines it must follow when determining parole suitability.  *See* 15 CCR

11 § 2402, *et seq.*

12          Accordingly, the Board is guided by the following regulations in making a

13 determination whether a prisoner is suitable for parole:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which

01
02
03

> bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

04 15 CCR §§ 2402(a) & (b).  Subsections (c) and (d) also set forth suitability and unsuitability

05 factors to further assist the Board in analyzing whether an inmate should be granted parole,

06 although "the importance attached to any circumstance or combination of circumstances in a

07 particular case is left to the judgment of the panel." 15 CCR § 2402(c).

08        In examining its own statutory and regulatory framework, the California Supreme

09 Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is

10 "whether some evidence supports the *decision* of the Board … that the inmate constitutes a

11 current threat to public safety, and not merely whether some evidence confirms the existence

12 of certain factual findings."  *In re Lawrence*, 44 Cal.4th 1181, 1212 (2008).  The court also

13 asserted that the Board's decision must demonstrate "an individualized consideration of the

14 specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability

15 factors that forms the crux of the parole decision; the significant circumstance is how those

16 factors interrelate to support a conclusion of current dangerousness to the public."  *Id*. at

17 1204-05 & 1212.  As long as the evidence underlying the Board's decision has "some indicia

18 of reliability," parole has not been arbitrarily denied.  *See Jancsek*, 833 F.2d at 1390.  As the

19 California courts have noted, the Board's discretion in parole release matters is very broad.

20 *See Lawrence*, 44 Cal.4th at 1204.  Thus, the penal code, corresponding regulations, and

21 California law clearly establish that the fundamental consideration in parole decisions is

22 public safety and an assessment of a prisoner's current dangerousness.  *See id.*, at 1205-06.

01        C.      *Summary of Governing Principles*

02        By virtue of California law, petitioner has a constitutional liberty interest in release on

03   parole.  The parole authorities may decline to set a parole date only upon a finding that

04   petitioner's release would present an unreasonable present risk of danger to society if he is

05   released from prison.  Where the parole authorities deny release, based upon an adverse

06   finding on that issue, the role of a federal habeas court is narrowly limited.  It must deny relief

07   if there is "some evidence" in the record to support the parole authority's finding of present

08   dangerousness.  The penal code, corresponding regulations, and California law clearly support

09   the foregoing interpretation.

10        VI.      PARTIES' CONTENTIONS

11        Petitioner challenges the Board's 2002 decision to deny parole on the grounds that the

12   Board's decision violated his federal constitutional rights.  (*See* Dkt. 1.)  Specifically, he

13   contends his due process rights were violated when the Board: (1) denied him parole based

14   upon insufficient evidence and immutable factors, none of which he contends supports a

15   finding of current dangerousness (Petitioner's Issue II and IX); (2) concluded his parole plans

16   were inadequate because the Board failed to ensure his wife's most current letter regarding his

17   parole plans was in the file (Petitioner's Issue III); (3) found petitioner failed to accept

18   responsibility for the crime because petitioner would not agree with the prosecutor's version

19   of events (Petitioner's Issue IV); (4) failed to grant petitioner a parole release date after he

20   complied with the Board's 1999 parole release requirements (Petitioner's Issue V); and (5)

21   was biased due to pressure by then-Governor Gray Davis' "no parole" policy  (Petitioner's

22   Issue VIII).  (*See id.*)  Petitioner also claims § 2402(c)(1)(A-E) is unconstitutionally vague

01  (Petitioner's Issue VI), and that his sentence is disproportionate to his offense in violation of

02  his Eighth Amendment right to be free from cruel and unusual punishment (Petitioner's Issue

03  VIII).[5]  (*See id.*)

04          Respondent claims petitioner does not have a constitutionally protected liberty

05  interest in being released on parole, that the "some evidence" standard is inapplicable in this

06  context, and that even if he does have a protected liberty interest, the Board adequately

07  predicated its denial of parole on "some evidence."  (*See* Dkt. 9 at 2-3 & 13-14.)  In addition,

08  respondent asserts that petitioner's claims that the Board was biased, that the California

09  regulations are unconstitutionally vague and that his sentence violates the Eighth Amendment

10  are without merit.  (*See id.* at 15-17.)  In conclusion, respondent argues that the state court's

11  decision was not contrary to or an unreasonable application of United States Supreme Court

12  law.  (*See id.* at 17-18.)

13          VII.    ANALYSIS OF RECORD IN THIS CASE

14          A.      *Due Process Claims (Issues II-V, VII & IX)*

15                  1.      The Commitment Offense and Related Factors

16          The Board based its decision that petitioner was unsuitable for parole primarily upon

17  his commitment offense, as well as upon his unstable social history (use and abuse of

18  alcohol), two prior arrests, insufficient participation in self-help programming, and the fact

19  that the District Attorney's Office opposed his release on parole.  (*See* Dkt. 1, Exh. A at 54-

20  56.)  As to suitability factors, the Board noted that while petitioner had experienced some

21  health problems that prevented him from working, when he was able to work he had received

22

---

[5] Petitioner's claims begin with "Issue II."  (*See* Dkt. 1 at 6-7.)

01   "above average work reports," had a zero classification score, and had only received three

02   115's in over twenty-two years of incarceration, with the last one occurring in 1994.  (*See id.*

03   at 56.)  "When misconduct is believed to be a violation of law or is not minor in nature, it

04   shall be reported on a CDC Form 115 (Rev.7/88), Rules Violation Report."  *See* 15 CCR

05   § 3312 (a)(3).

06        The Board recommended that petitioner complete a vocation, remain disciplinary-free

07   and participate in self-help and therapy programming.  (*See* Dkt. 1, Exh. A at 57.)  In addition,

08   the Board noted that petitioner's relationship with his wife was "going to be very important"

09   once petitioner's parole plans were at issue.  (*See id.* at 57-58.)  Because the last letter in the

10   record was from 1996 and petitioner intended to live with his wife upon his release, the Board

11   advised him to "make sure you get letters from her indicating that you are still together, that

12   she's still going to provide you a home.  If not, if that's over with, then you're going to have

13   to make other plans.  Submit those plans and get help in regard to those new plans."  (*See id.*)

14        The Board's findings track many of the applicable unsuitability and suitability factors

15   listed in §§ 2402(b), (c) and (d).  After considering the evidence in the record, the Board

16   denied petitioner a parole release date and reset his parole suitability hearing for two years.

17   (*See id.* at 56.)

18        With regard to the circumstances of the commitment offense, the Board concluded that

19   the "number one reason [we denied you a parole release date] is because of the life crime."

20   (*See id.*; Dkt. 9 at 14.)  This conclusion was supported by Board's finding, as discussed *supra*,

21   that a month after petitioner threatened the victim for allegedly stealing ten dollars of

22   marijuana from him, he invited her back to his apartment and a struggle ensued.  (*See* Dkt. 1,

01  Exh. A at 54-55.)  After petitioner strangled the victim to death, he attempted to hide the body

02  in a remote mountain location.  (*See id.* at 55.)  The Board therefore found that the crime was

03  carried out in "a cruel manner, a manner which demonstrates a callous disregard for human

04  suffering."  (*See id*. at 54.)  *See* 15 CCR § 2402(c)(1)(D).  The Board also found that the

05  victim was abused during the commission of the crime.  (*See id.* at 54.)  The Los Angeles

06  County Superior Court and California Court of Appeal subsequently determined, however,

07  that there was insufficient evidence to support the finding that the victim was abused.  (*See*

08  *id.*, Ex. H at 3-4 n.1 & I.)  *See* 15 CCR § 2402(c)(1)(C).

09       Petitioner argues that the facts of this case are not as egregious as the facts of many

10  second degree murder cases and thus do not rise to the level of the commitment offense

11  factors set forth in § 2402(c)(1).  *See Irons*, 505 F.3d at 849 (where petitioner shot the victim

12  twelve times and after he complained of pain, petitioner stabbed him in the back twice,

13  wrapped the body in a sleeping bag, left it in a room for ten days and then dumped it in the

14  ocean).  This Court's inquiry, however, is limited to whether there is "some evidence" to

15  support the superior court's finding under § 2402(c)(1), not whether petitioner's conviction

16  was more or less egregious than any other second degree murder.  In fact, the Board is

17  required to conduct an individualized determination in each case, not a comparative one.  The

18  superior court's decision in this case is supported by "some evidence."  Accordingly, the state

19  courts' decisions were not an unreasonable application of clearly established federal law or

20  based on an unreasonable determination of facts in light of the evidence presented.

21       The second unsuitability factor relied upon by the Board was petitioner's unstable

22  social history.  (*See* Dkt. 1, Ex. A at 55.)  An "unstable social history" is defined as a "history

01  of unstable or tumultuous relationships with others." *See* 15 CCR § 2402(c)(3).  The Board

02  cited petitioner's "involve[ment] in the use and abuse of alcohol to his detriment" to support

03  its conclusion.  (*See* Dkt. 1, Ex. A at 55.)  This fact, without more, does not provide "some

04  evidence" to support the Board's finding that petitioner had a history of unstable or

05  tumultuous relationships.  In fact, we know from the Board's discussion during this hearing

06  that petitioner has maintained good relationships with his family and friends and that has a

07  strong support system.  (*See id.* at 31-33.)

08          The third factor cited by the Board in denying petitioner a parole release date was

09  petitioner's "two prior arrests."  (*See id*. at 55.)  In discussing the arrests, the Board found one

10  arrest was based upon petitioner "throwing a substance at a vehicle, the other was being in

11  possession of a weapon, a shotgun . . . that he indicated he carried after being threatened . . .

12  by another individual."  (*Id.*)  In reviewing this claim, the Los Angeles County Superior Court

13  and California Court of Appeal concluded, as to his arrest for throwing the substance at a

14  vehicle, "that it was improper for the Board to rely [on] an arrest, absent reliable

15  corroborating evidence, to support a finding of unsuitability."  (*Id.*, Exh. H at 2 and 4 n.2.)

16  Hence, the Board was only permitted to consider petitioner's prior conviction for carrying a

17  loaded firearm and the fact that he "slap[ed] his wife in 1996 following an argument."  (*Id.*,

18  Exh. A at 15.)  The lower court properly concluded, however, that there was sufficient

19  evidence to support an overall finding of unsuitability, as discuss *infra,* and, thus, this factor

20  was not determinative.  (*See id.*, Exh. H. at 4.)

21          The fourth and fifth factors cited by the Board was that petitioner needed to complete

22  a vocation and participate in additional self-help and therapy programming.  (*See id.*, Exh. A

01 at 56-57.)  While the Board commended petitioner for his institutional behavior, his

02 involvement in self-help programming, his commitment to upgrade himself educationally and

03 vocationally, and for "staying out of trouble all these years," it still found petitioner needed to

04 continue to pursue his education, participate more fully in self-help therapy to address any

05 alcohol-related issues and to avoid any further disciplinary violations.  (*Id.* at 54 & 55-56.)

06 The Board also noted that the most recent counselor's opinion regarding petitioner was very

07 favorable, with the only risk factor being a history of alcohol abuse.  (*See id.* at 30.)  There is

08 therefore "some evidence" to support the Board's findings regarding petitioner's need for

09 continued vocational, self-help or therapy programming.

10       Because this factor involves petitioner's post-conviction conduct (vocational, self-help

11 or therapy programming) which is changeable, petitioner's contention that the Board's

12 decision was based upon immutable factors is also without merit and should be denied.

13       Thus, there was "some evidence" to support the Board's findings as to some, but not

14 all, of the unsuitability factors upon which it based its decision.  As stated above, it is beyond

15 the authority of a federal habeas court to determine whether evidence of suitability outweighs

16 the circumstances of the commitment offense, together with any other reliable evidence of

17 unsuitability for parole.  The Board has broad discretion to determine how suitability and

18 unsuitability factors interrelate to support its conclusion of current dangerousness to the

19 public.  *See Lawrence*, 44 Cal.4th at 1212.  It is therefore within the Board's authority to

20 determine the weight or value of the evidence presented.  The Board in this case noted

21 petitioner's progress, but concluded that he needed additional time to demonstrate his

22

REPORT AND RECOMMENDATION - 19

01  suitability for parole.  Thus, under the minimally stringent "some evidence standard," the

02  record supports the California courts' orders upholding the Board's decision.

03                     2.      Law Enforcement's Opposition to Parole

04          Petitioner also contends the Board erred when it considered the Los Angeles Deputy

05  District Attorney and Sheriff's Department's opposition to his parole.  (*See* Dkt. 1 at 19-20.)

06  In essence, petitioner challenges the Board's reliance upon any input provided by these two

07  entities during his parole release hearing.  Pursuant to California Penal Code Regulation

08  § 3041.7, a prosecutor may attend a parole hearing to represent "the interests of the people."

09  Petitioner is correct, that in the absence of other reliable evidence of unsuitability in the

10  record, opposition by law enforcement based upon the nature of the commitment offense does

11  not constitute "some evidence" to support parole denial.  *See Rosenkrantz v. Marshall,* 444

12  F.Supp.2d 1063, 1080 n.14 (C.D. Cal. 2006) (providing that where a district attorney and

13  sheriff's department opposed parole based solely upon the gravity of the commitment offense,

14  their opposition did not constitute "some evidence" because it was "merely cumulative" of the

15  Board's findings regarding the offense).  Moreover, the Los Angeles County Superior Court

16  ruled in petitioner's state habeas petition that the Board is precluded from relying upon such

17  opinions as they constitute "inadmissible hearsay."  (*See* Dkt. 1, Exh. H at 4, n.1.)  Thus, the

18  denials of parole by the Board, and habeas relief by the superior court, were supported by

19  evidence other than the expression of views by the deputy district attorney and by the

20  Sheriff's Department.  The expression of these views at the parole hearing therefore provides

21  no basis for federal habeas corpus relief.

22

01                        3.    Inadequate Parole Plans

02          Petitioner contends he is entitled to a new hearing because the Board relied

03   substantially upon the fact that he lacked a recent letter from his wife regarding his parole

04   release plans.  (*See* Dkt. 1 at 21-22 & Exh. O.)  He now believes that his wife's letter of

05   support was mailed to the Board's Sacramento headquarters weeks before his hearing and for

06   some reason it did not make it into the Board's file.  (*See id.*)  Indeed, the Board was

07   concerned that petitioner did not have a current letter of support from his wife – the last letter

08   the Board stated it had on file was from 1996.  (*See id.*, Exh. A at 57-58.)  While a current

09   letter of support from petitioner's wife likely would have assisted the Board with its findings

10   under § 2402(d)(8) ("Understanding and Plans for Future"), the unexplained absence of the

11   letter does not constitute a violation of federal due process rights.  The Board relied upon a

12   myriad of other factors to deny petitioner a parole release date.  As a result, this factor was not

13   determinative and petitioner's request for a new hearing should be denied.  The Court also

14   notes that petitioner had one or more later parole hearings, at which the missing letter, and

15   later relevant information, were presumably included in the record.

16                        4.    Petitioner Required to Adopt the Prosecutor's Version of the Facts

17          Petitioner contends that "he was denied parole, in part, because he refuses to

18   acknowledge the prosecutor's version of events."  (*See* Dkt. 1 at 22-23.)  This contention also

19   lacks merit.  Citing the prosecutor's opinion, without more, does not demonstrate that the

20   Board relied upon the prosecutor's version of the facts to support its findings, especially when

21   the Board carefully developed the factual record in this case.  In addition, the Board's

22   recommendation that petitioner seek additional therapy was based upon his alleged history of

01 alcohol abuse, as discussed, *infra*.  Most importantly, the Board read into the record excerpts

02 from the most recent counselor's report that documented that petitioner had accepted

03 responsibility and was remorseful.  This claim should therefore be denied.

### 5.   Petitioner Complied with 1999 Board Requirements

05   Petitioner claims that he "met or exceeded" the requirements of the 1999 Board.  (*See*

06 *id.* at 24.)  Implicit in this argument is the contention that he should have been granted a

07 parole release date by the 2002 Board.  This claim without more fails to present a federal

08 constitutional question and should be denied.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

09 (1991).

### 6.   Biased Parole Hearing

11   Petitioner claims that his due process rights were violated when the Board failed to

12 conduct an individualized determination of the facts and instead was pressured by then-

13 Governor Davis' alleged "no parole policy." (*See* Dkt. 1 at 26-31.)  Although petitioner has a

14 due process right to parole consideration by a neutral, impartial decision-maker, his claim of

15 bias must be supported by the record.  *See O'Bremski v. Maas*, 915 F.2d 418, 422 (9th Cir.

16 1990) (an inmate is "entitled to have his release date considered by a Board that [is] free from

17 bias or prejudice"); *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) ("[c]onclusory

18 allegations which are not supported by a statement of specific facts do not warrant habeas

19 relief.").  Nothing in the record demonstrates that the Board was biased or motivated by this

20 or any other improper consideration.  *See Bettencourt v. Knowles*, 2009 WL 4755403, *17-18

21 (E.D.  Cal. 2009) (unpublished) (holding where petitioner has offered no evidence to support

22

01 claim of parole bias his claim should be denied).  In fact, the Board's decision was careful,

02 thorough, and factually specific.  Accordingly, this claim should be denied.

03        B.      *Remaining Constitutional Claims (Issues VI & VIII)*

04                1.      Void for Vagueness

05        Petitioner claims that § 2402(c)(1)(A-E), which sets forth "Circumstances Tending to

06 Show Unsuitability" with regard to the "Commitment Offense," is unconstitutionally vague.

07 In general, a regulation is void for vagueness "if it fails to give adequate notice to people of

08 ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and

09 discriminatory enforcement."  *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir.1989);

10 *see also Maynard v. Cartwright,* 486 U.S. 356, 361 (1988).  Accordingly, this Court must

11 determine whether § 2402(c)(1) provided petitioner with adequate notice and the state court

12 with adequate guidance.

13        In § 2402(c)(1), the Legislature explicitly set forth a non-exhaustive list of five factors

14 the Board should consider when examining the commitment offense.  These factors are

15 detailed and explicit.  Other district courts in this Circuit that have reviewed this same issue

16 have held that "because these sub-factors are set forth in simple plain words, such that a

17 reasonable person of ordinary intelligence would understand their meaning and the conduct

18 they proscribe, the notice requirement is satisfied."  *Edwards v. Curry,* 2009 WL 1883739, *9

19 (N.D. Cal. 2009) (unpublished) (citing *United States v. Hogue,* 752 F.2d 1503, 1504 (9th Cir.

20 1985); *see also Wagoner v. Sisto,* 2009 WL 2712051, *6 (C.D. Cal. 2009) (unpublished)

21 (stating "the five sub-factors outlined in § 2402(c)(1)(A)-(E) serve to limit the 'heinous,

22 atrocious or cruel' language of section 2402(c) and narrow the class of inmates that are found

01 unsuitable for parole . . . thus, the terms are not unconstitutionally vague"); *Burnright v.*

02 *Carey,* 2009 WL 2171079, *5 (E.D. Cal. 2009) (unpublished) (finding that after reading Cal.

03 Penal Code § 3041(b) together with 15 CCR §§ 2402(c) and (d), a reasonable person of

04 ordinary intelligence would understand, and therefore be on notice, regarding the standards

05 for parole eligibility).  In addition to the fact that these factors are detailed and specific, our

06 sister courts' reasoning is highly persuasive.  *See Hansen v. Hornbeak*, 2009 WL 4136544 at

07 *8 (E.D. Cal. 2009) (unpublished).  I therefore recommend this claim be denied.

08                2.    <u>The Eighth Amendment</u>

09       Petitioner argues that the Board's decision to deny him a parole release date

10 constitutes cruel and unusual punishment in violation of the Eighth Amendment.  (*See* Dkt. 1

11 at 31-34.)  Specifically, he asserts that his length of confinement is disproportionate in

12 comparison to his crime as evidenced by the fact that other inmates have served less time for

13 greater offenses.  (*See id.* at 29.)  Respondent correctly argues that petitioner's claim is

14 without merit.  (*See* Dkt. 9 at 16.)

15       The United States Supreme Court has held that a life sentence is constitutional, even

16 for a non-violent property crime.  *See Rummel v. Estelle*, 445 U.S. 263, 274 (1980) (holding

17 that "the length of the sentence actually imposed is purely a matter of legislative

18 prerogative"); *Harmelin v. Michigan*, 501 U.S. 957, 962-64 (1990) (the same).  Accordingly,

19 a life sentence for a second degree murder such as that committed by petitioner would not

20 constitute cruel and unusual punishment.  *See Banks v. Kramer*, 2009 WL 256449, *2 (E.D.

21 Cal. 2009) (unpublished) (holding that a Board's refusal to release a prisoner who was

22 sentenced to sixteen years-to-life for murder does not constitute cruel and unusual

01 punishment).  To the extent petitioner is asserting that his sentence should be less than other

02 life prisoners, California law does not require the Board to conduct a comparative analysis of

03 the period of confinement served by other prisoners with similar crimes, nor does it require

04 the Board to refer to the sentencing matrices.  *See In re Dannenberg*, 34 Cal.4th 1061, 1083-

05 84 (2005) (holding whether an inmate poses a current danger is not dependent upon whether

06 his commitment offense was more or less egregious than other, similar crimes).  Instead, the

07 Board is required to review the specific facts of each case and to make an individualized

08 determination of whether that prisoner is suitable for parole.  *See Lawrence*, 44 Cal.4th at

09 1221.  Thus, petitioner's allegations, without more, fail to establish an Eighth Amendment

10 violation.

11         VIII.   CONCLUSION

12         Given the totality of the Board's findings, there is "some evidence" in the record that

13 petitioner's release date as of the Board's 2002 decision would have posed an unreasonable

14 risk to public safety.  The California courts' orders upholding the Board's decision were

15 therefore not contrary to, or an unreasonable application of, clearly established federal law, or

16 based on an unreasonable determination of facts.  Because the Board and the state courts'

17 ultimate decisions were supported by "some evidence," there is no need to reach respondent's

18 argument that another standard applies.  Accordingly, I recommend the Court find that

19 petitioner's constitutional rights were not violated, deny the petition, and dismiss this action

20 with prejudice.

21         This Report and Recommendation is submitted to the United States District Judge

22 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

01  days after being served with this Report and Recommendation, any party may file written

02  objections with this Court and serve a copy on all parties.  Such a document should be

03  captioned "Objections to Magistrate Judge's Report and Recommendation."  Any response to

04  the objections shall be filed and served within fourteen (14) days after service of the

05  objections.  The parties are advised that failure to file objections within the specified time

06  might waive the right to appeal this Court's Order.  *See Martinez v. Ylst*, 951 F.2d 1153 (9th

07  Cir. 1991).  A proposed order accompanies this Report and Recommendation.

08          DATED this 13th day of January, 2010.

09

10          _____

11          JOHN L. WEINBERG
            United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION - 26